UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
KYLE HARTRY,

                        Plaintiff,                               08 CV 3725 (ADS)(ETB)

    -against-

COUNTY OF SUFFOLK, SGT. "JOHN" LUNQUIST, Individually
and in his Official Capacity, DET. VINCE DALY, Individually and
in his Official Capacity and C.O. "JOHN DOE" and C.O. "JANE
DOE"#1-10, Individually and in their Official Capacities, (the name
John Doe being fictitious, as the true names are presently unknown),

                        Defendants,
----------------------------------------------------------------------X


### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Jon L. Norinsberg, Esq.
225 Broadway, Suite 2700
New York, New York 10007
(212) 791-5396

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................. ii

PRELIMINARY STATEMENT ............................................... 1

STATEMENT OF FACTS ..................................................... 2

SUMMARY JUDGMENT STANDARD ........................................ 8

ARGUMENT ................................................................... 8

I. DEFENDANT LUNQUIST'S MOTION FOR SUMMARY JUDGMENT MUST BE DENIED .................................................................. 8

    A. Deliberate Indifference By Prison Officials Can Give Rise To Liability Under 42 U.S.C. § 1983 .................................................. 8

    B. There Is Ample Evidence in the Record to Support Plaintiff's Deliberate Indifference Claim under 42 U.S.C. § 1983 ............................ 10

II. DEFENDANTS' PRLA DEFENSE IS COMPLETELY BASELESS AND SHOULD BE REJECTED BY THE COURT ......................................... 12

    A. Defendant Lunquist Repeatedly Assured Plaintiff That He Was Going To Be Transferred To Another Prison, And Thus, Sgt. Lunquist Should Be Estopped From Now Raising This Defense ........................... 13

    B. Plaintiff Was Transferred to Another Jail Facility After His Attack, And Thus, There Was No Longer Any Reason To File A Grievance ...................... 13

II. SUMMARY JUDGMENT MUST BE DENIED ON PLAINTIFF'S NEGLIGENCE CLAIM ........................................................ 14

    A. Defendants Had Actual Notice of Multiple and Repeated Violent Threats Against Plaintiff Kyle Hartry, But Failed To Take Adequate Measures To Protect His Safety ............................................................. 14

CONCLUSION .................................................................. 15

<S>

| Table of Authorities | Page |

Ayers v. Coughlin, 780 F.2d 205 (2d Cir 1985) .................................. 9, 11

Brady v. Town of Colchester, 863 F.2d 205 (2d Cir. 1988) ............................. 8

Chambers v. TRM Copy Centers Corp., 43 F.3d 29 (2d Cir. 1994) ...................... 8

Doe v. New York City Dep't of Social Servs., 649 F.2d 134 (2d Cir. 1981) ............... 11

Dunn v. State of New York, 29 NY2d 313 (1971) ................................. 14

Farmer v. Brennan, 511 U.S. 825 (1994) ......................................... 9

First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253 (1968) ....................... 8

Hayes v. New York City Department of Corrections, 84 F.3d 614 (2d Cir. 1996) ..... 9, 10, 11

Hemphill v. New York ,380 F.3d 680 (2d Cir. 2004) ............................. 12,13

Howard v. Schoberle, 907 F. Supp. 671 (S.D.N.Y. 1995) ............................ 8

Johnson v. Miles, 2009 U.S. App. LEXIS 22704 (2d Cir. 2009) ..................... 9, 10

Macias v. Zenk, 495 F.3d 37 (2d Cir. 2007) ..................................... 12

Morales v. New York State Department of Corrections, 842 F.2d 27 (2d Cir. 1988) ......... 9

Ortiz v. Goord, 2008 U.S. App. LEXIS 9655 (2d Cir. 2008) ......................... 11

Sanchez v. State of New York, 99 N.Y.2d 247 (2002) ............................ 14, 15

United States v. Bailey, 444 U.S. 394 (1980) ..................................... 9

Villante v. Department of Corrections of the City of New York, 786 F.2d 516
    (2d Cir. 1986) .......................................................... 9, 11

Weyant v. Okst, 101 F.3d 845 (2d Cir. 1996) ..................................... 8

</S>

## **PRELIMINARY STATEMENT**

In the pre-motion conference held on August 2, 2010, the Court heard extensively from both sides about the merits of their respective positions. After hearing from both sides, the Court strongly urged defense counsel to reconsider whether or not defendants wished to file this motion. At the time, the Court noted that it appeared clear there were factual issues which would have to be decided by a jury, and could not be resolved as matter of law. Apparently undeterred, defense counsel chose to file this motion for summary judgment anyway.

Simply put, defendants' motion for summary judgment must be denied because there is *ample* evidence to support plaintiff's claims of deliberate indifference by Sgt. Lunquist under 42 U.S.C. § 1983. Specifically, plaintiff has adduced evidence that: (1) defendant Lunquist *knew* that plaintiff was considered to be a "snitch" by other inmates at SCCF; (2) defendant Lunquist *knew* that "a copy of the statement [that plaintiff had written against another inmate] had been passed around the facility, *posing a threat to Inmate Hartry's safety*"; (3) defendant Lunquist *knew* that, as a result of this statement, *"Hartry has been labeled a rat and received death threats* ..."; (4) defendant Lunquist *knew* that plaintiff's cooperation with law enforcement had become *"well known throughout the jail."*; (5) defendant Lunquist has stated publicly that *"the worst thing* you can be [in jail] is a snitch"; (6) defendant Lunquist had received <u>10 to 20</u> phone calls from plaintiff regarding his safety in the six weeks prior to the assault; (7) notwithstanding these facts, defendant Lunquist failed to fill out a substitute jail order ("SJO"), which would have transferred plaintiff to another jail facility; (8) it would have taken Sgt. Lunquist only *ten minutes* to fill out an SJO, which he does on average five to ten times a year; and (9) only *after* plaintiff was viciously assaulted by another inmate for being a snitch was an SJO filled out by Sgt. Lunquist.

Based on the foregoing, it is respectfully submitted that defendants' motion for summary judgment should be denied in all respects.

## STATEMENT OF FACTS

On October 24, 2007, plaintiff Kyle Hartry was viciously assaulted at the Suffolk County Correctional Facility ("SCCF"). See Deposition Transcript of Kyle Hartry ("Hartry Dep.") annexed to the Declaration of Jon L. Norinsberg ("Norinsberg Decl."), Ex. A, at 122. The assault was committed by an inmate named Vincent Dalton. (Id.). Immediately prior to the assault, inmate Dalton stated out loud "I hate snitches" or words to that effect. (Hartry Dep. at 132, 133, 135;147).

**September 2007: Plaintiff is First Identified As A "Snitch" Based On His Cooperation With Law Enforcement.**

In September 2007, an inmate named "Brooks" learned that plaintiff Kyle Hartry had written a statement against Robin Allen, another inmate at SCCF (Hartry Dep. at 100;175). According to the unwritten rules of jail, "you are not suppose[d] to testify against another inmate." See Deposition Transcript of Steven Lunquist ("Lunquist Dep."), Norinsberg Decl., Ex. B, at 32). If you do, you will be labeled a "snitch" by other inmates, which is "somebody who tells on somebody else." (Lunquist Dep. at 32). In fact, according to Sgt. Lunquist, "the *worst thing* you can be [in jail] is a snitch" (Lunquist Dep. at 100, 102). See also Interview of Steven Lunquist by Long Island Press, Norinsberg Decl, Ex. C. Once an inmate becomes known as a "snitch", the inmate becomes a "target" whose safety is in jeopardy due to "retribution"by other inmates. (Lunquist Dep. at 31).

In this case, Sgt. Lunquist knew that Hartry had written a statement against Inmate Robin Allen. (Lunquist Dep. at 29, 97-99). Further, Sgt. Lunquist knew that Hartry had been

labeled a "rat" by other inmates as a result of this statement. (Lunquist Dep. at 77). Sgt. Lunquist learned this from both other inmates and from Mr. Hartry himself. (Lunquist Dep. at 77). The fact that Mr. Hartry had written a statement had become "*well known throughout the jail*". (Lunquist Dep. at 75; 92; Norinsberg Decl., Ex. D). Sgt. Lunquist knew this from "other inmates talking". (Lunquist Dep. at 76, 77). Sgt. Lunquist also knew this from speaking to Hartry himself. (Lunquist Dep. at 76, 77). Sgt. Lunquist became aware that this statement had been passed around the jail on or about September 19, 2007. (Lunquist Dep. at 105).

**Regardless of Where He Is Housed, Plaintiff Is Repeatedly Threatened By Other Inmates At The Jail.**

In early September 2007, inmate "Brooks", who was known as the King of the Bloods, told plaintiff "when I get those statements, *you cannot live in this jail.*" (Hartry Dep. at 100;175). After this threat was made, plaintiff was moved to the "PODS", which is "on the other side of Suffolk County Jail." (Hartry Dep. at 104). Mr. Hartry was moved from the jail's general population to the PODS because of concerns for his security (Lunquist Dep. at 119). Despite this move across the jail, however, the very next morning inmates in the yard pointed at Kyle Hartry and yelled out: "Hey. *He's a snitch.*" (Hartry Dep. at 105). After this incident, plaintiff was again moved to another section of the jail, this time into protective custody. (Hartry Dep. at 109, 110). Once again, this move was prompted out of concerns for Mr. Hartry's security. (Lunquist Dep. at 119).

At the time of plaintiff's transfer into protective custody, Investigator Victoria McCarrick prepared a form which documented the reasons for the move. Specifically, Investigator McCarrick wrote as follows: "a copy of the statement [by Hartry against inmate Robin Allen] has been passed around the facility, *posing a threat to Inmate Hartry's safety*" (Norinsberg Decl., Ex. E). See also Deposition Transcript of Victoria McCarrick ("McCarrick Dep."),

Norinsberg Decl., Ex. F, at 10;22, 23. According to this document, Mr. Hartry was being moved into protective custody because there was "an *immediate threat to your safety* from other inmates." (Ex. F; McCarrick Dep. at 28). Investigator McCarrick specifically told Sgt. Lunquist about the threats to Mr. Hartry's safety. (McCarrick Dep. at 14).

**Even After Being Placed Into Protective Custody, Plaintiff Continues To Receive Violent Threats From Other Inmates.**

The move into protective custody did not stop plaintiff from being threatened by other inmates. Shortly after the transfer, another inmate threw a wet tissue at plaintiff to get his attention. (Hartry Dep. at 113). Thereafter, the inmate showed Mr. Hartry "some type of weapon" (Hartry Dep. at 114), saying out loud "I heard about you." (Hartry Dep. at 114, 117). The inmate then made an explicit threat to Mr. Hartry: "When I am [get] out of my cell, *I'm going to get at you.*" (Hartry Dep. at 114, 117). Thereafter, the inmate displayed a sharpened spoon which, to Mr. Hartry, looked like a "shank" ((Hartry Dep. at 117; 119). Mr. Hartry told Sgt. Lunquist about this incident. (Lunquist Dep. at 147).

Thereafter, Mr. Hartry was moved to administrative segregation, which was just a "different area of the jail." (Hartry Dep. at 120). Simply moving Mr. Hartry from one section of the jail to another was not sufficient to protect plaintiff, because "you still are in contact with people" (Hartry Dep. at 178). In fact, while housed in administrative segregation., at least two other inmates confronted Mr. Hartry about what they were hearing around the jail about him being a "snitch.". (Hartry Dep. at 124, 125). Mr. Hartry was eventually attacked by yet another inmate, Vincent Dalton, who was also housed in the administrative segregation of the jail (Hartry Dep. at 122; 147). The assault took place in the "Day Area", which is a an open area

where inmates have free contact with one another. (Lunquist Dep. at 83). There is nothing separating one inmate from another in the day area. (Lunquist Dep. at 83).

**Plaintiff Calls Sgt. Lunquist 10 to 20 times Prior To the Assault, Expressing Concerns Over His Safety.**

In the weeks leading up to this assault, Sgt. Lunquist had received multiple phone calls from Kyle (Lunquist Dep. at 9). In fact, Sgt. Lunquist had received "10 to 20" phone calls from Kyle Hartry.[1] (Lunquist Dep. at 10,34, 39; Hartry Dep. at 144). During these many calls, plaintiff told Sgt. Lunquist that he "feared for his safety." (Lunquist Dep. at 11-12; 34). Specifically, plaintiff told Sgt. Lunquist that "my life is in danger" and "I need to be moved", and "what's going on with being moved out of jail?." (Hartry Dep. at 145). Mr. Hartry "was always calling and trying to get out of the prison, period. I knew I couldn't just go without being seen. There's no way. *It's not safe for me to be anywhere in the jail.* I knew it."(Hartry Dep. at 121).[2] Notwithstanding the 10-20 phone calls, Lunquist never made a single report about any of these calls (Lunquist Dep. at 39). According to Lunquist, there was "no need" to make a report. (Lunquist Dep. at 40). Further, Sgt. Lunquist never made any type of note or record relating to calls from Hartry. (Lunquist Dep. at 40).

**Sgt. Lunquist Assures Plaintiff That He Is Going To Be Moved To Another Jail, But In Fact, Does Nothing To Make This Happen Until After Plaintiff Is Attacked.**

In response to plaintiff's many phone calls, Sgt. Lunquist told Mr. Hartry that he would, in fact, be moved out of SCCF. (Hartry Dep. at 179). Specifically, Sgt. Lunquist told Mr. Hartry he was going to be transferred to the Nassau County Correctional Center ("NCCC."): "we're

---

[1] Both parties agree that this is the number of calls made to Sgt. Lunquist.

[2] Detective Daly, the homicide detective handling the case against Robin Allen, was also concerned for Hartry's safety, and specifically asked Sgt. Lunquist that "we look out for him" (Lunquist Dep. at 16, 26-28).

going to get to Nassau." (Hartry Dep. at 146). In order to transfer Mr. Hartry to another facility, Sgt. Lunquist would need to fill out a Substitute Jail Order ("SJO"). (Lunquist Dep. at 65). It takes ten minutes to fill out the SJO form. (Lunquist Dep. at 68) The entire process could be completed in one day. (Lunquist Dep. at 69). Sgt. Lunquist typically prepares five to ten SJO's per year. (Lunquist Dep. at 96).

An SJO is issued whenever there is a concern about the safety of a particular inmate. (Lunquist Dep. at 66; McCarrick Dep. at 31). When an inmate receives a "threat of physical harm" by another inmate, this could be a basis for issuing an SJO (Lunquist Dep. at 89). Sgt. Lunquist learned that Kyle Hartry had, in fact, been threatened by other inmates (Lunquist Dep. at 34). Sgt. Lunquist learned this when Mr. Hartry was transferred to protective custody in September 2007. (Lunquist Dep. at 34; 77). Sgt. Lunquist learned from Hartry that he had received threats from other inmates (Lunquist Dep. at 78). Further, Sgt. Lunquist learned that plaintiff had not been threatened by just a few inmates, but by multiple inmates (Lunquist Dep. at 93). Notwithstanding these threats, never even *considered* preparing an SJO for Kyle Hartry (Lunquist Dep. at 70).

**Plaintiff Is Viciously Attacked By Inmate Dalton, Who Accuses Him of Being A "Rat" And A "Snitch."**

On October 24, 2007, plaintiff was suddenly tapped on his shoulder from behind by another inmate, Vincent Dalton, in the Day Area. (Hartry Dep. at 132). When Mr. Hartry turned around, Dalton hit him in the face. (Hartry Dep. at 132; Lunquist Dep. at 54,58). Dalton then stuck his leg out behind Hartry, flipped him over, and started punching him repeatedly while he was on the ground (Hartry Dep. at 136). Dalton attacked plaintiff because Mr. Hartry was a cooperating witness (Lunquist Dep. at 58-9). Immediately prior to the assault, Dalton had said to

-6-

Hartry: "You['re a] snitch. You['re] a rat. I hate rats. I can't be around snitches and rats" (Hartry Dep. at 132, 133, 135; Lunquist Dep. at 52).

**Sgt. Lunquist Finally Prepares An SJO, But Only After Plaintiff Is Attacked.**

On October 25, 2007 – the day following the attack by Dalton – Sgt. Lunquist finally prepared an SJO to transfer Kyle Hartry to another jail facility. (Lunquist Dep. at 72). In this form, Sgt. Lunquist explained the reasons for transferring Mr. Hartry to another jail:

> Inmate Hartry wrote a statement against Inmate Allen Robin, Pin number 194559. Inmate Hartry will be testifying against inmate Allen. *This information has become well known throughout the jail. Hartry has been labeled a rat and received death threats ..."*

(Norinsberg Decl., Ex. D) (emphasis supplied).

Based on this SJO, Mr. Hartry was, in fact, transferred to the Nassau County Correctional Center ("NCCC") the following day. (Lunquist Dep. at 80). If Sgt. Lunquist had wanted to do so, he could have prepared this SJO in September 2007 or October 2007, at any time prior to assault. (Lunquist Dep. at 96). Sgt. Lunquist, however, never considered preparing an SJO prior to Oct. 25, 2007 (Lunquist Dep. at 81).

\*   \*   \*   \*

As a result of this attack, plaintiff suffered a left orbital fracture. (Norinsberg Decl. Ex. G (photos of plaintiff following the attack; Ex. H (hospital transfer form); Hartry Dep. at 79). To this day, plaintiff still experiences pain, discomfort and loss of sensation on the left side of his face. (Hartry Dep. at 84).

## SUMMARY JUDGMENT STANDARD

In deciding a summary judgment motion, "the district court is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996). "[A]ll doubts as to the existence of a genuine issue for trial should be resolved against the moving party." Brady v. Town of Colchester, 863 F.2d 205, 210 (2d Cir. 1988). A motion for summary judgment "may not be granted unless the court determines that there is no genuine issue of material fact and that the undisputed facts warrant judgment for the moving party as a matter of law." Howard v. Schoberle, 907 F. Supp. 671, 676 (S.D.N.Y. 1995). "[A]ll that is required [from a nonmoving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-90 (1968). "If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper." Howard, 907 F. Supp. at 677 (citing Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994)).

## ARGUMENT

I. **DEFENDANT LUNQUIST'S MOTION FOR SUMMARY JUDGMENT MUST BE DENIED.**

   A. **Deliberate Indifference By Prison Officials Can Give Rise To Liability Under 42 U.S.C. § 1983.**

"Municipalities have an affirmative duty to protect those held in their custody. Therefore, liability may be based on the grossly negligent or deliberately indifferent failure of

-8-

custodial officers to protect an inmate .... " <u>Villante v. Department of Corrections of the City of New York</u>, 786 F.2d 516, 519 (2d Cir. 1986). Indeed,"this circuit has continued to adhere to the position that a state prison guard's deliberate indifference to the consequences of his conduct for those under his control and dependent upon him may support a claim under § 1983." <u>Morales v. New York State Department of Corrections</u>, 842 F.2d 27, 30 (2d Cir. 1988) (citations omitted). This is because "[t]he Eight Amendment *requires* prison officials to take reasonable measures to guarantee the safety of inmates in their custody." <u>Hayes v. New York City Department of Corrections</u>, 84 F.3d 614, 620 (2d Cir. 1996) (citations omitted) (emphasis supplied). Therefore,"[t]he failure of custodial officers to employ reasonable measures to protect an inmate from violence by other prison residents has been considered cruel and unusual punishment." <u>Ayers v. Coughlin</u>, 780 F.2d 205, 209 (2d Cir. 1985) (citing <u>United States v. Bailey</u>, 444 U.S. 394, 423 (1980)). Accordingly, "under 42 U.S.C.§ 1983, prison officials are liable for harm incurred by an inmate if the officials acted with 'deliberate indifference' to the safety of the inmate." <u>Hayes v. New York City Department of Corrections</u>, 84 F.3d 614, 620 (2d Cir. 1996) (citations omitted).

"Deliberate indifference is found in the Eight Amendment context when a prison supervisor 'knows of and disregards an excessive risk to inmate health or safety.'" <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994)). "To state a claim for deliberate indifference to inmate safety under the Eight Amendment, a plaintiff must demonstrate that (1) "he is incarcerated under conditions posing a substantial risk of harm; and (2) prison officials possessed sufficient culpable intent." <u>Johnson v. Miles</u>, 2009 U.S. App. LEXIS 22704, *446 (2d Cir. 2009) (citing <u>Hayes v. New York City Department of Corrections</u>, 84 F.3d 614, 620-21 (2d Cir. 1996)). "A prison official has sufficient culpable intent if 'he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures

to abate that harm.'" Johnson v. Miles, 2009 U.S. App. LEXIS 22704 *446 (2d Cir. 2009) (citing Hayes v. New York City Department of Corrections, 84 F.3d 614, 620-21 (2d Cir. 1996)).

### B. There Is Ample Evidence in the Record to Support Plaintiff's Deliberate Indifference Claim under 42 U.S.C. § 1983.

Defendant Lunquist's motion must be denied because there is ample evidence to support plaintiff's claims of deliberate indifference by Sgt. Lunquist under 42 U.S.C. § 1983. Specifically, plaintiff has adduced evidence that: (1) defendant Lunquist *knew* that plaintiff was considered to be a "snitch" by other inmates at SCCF; (2) defendant Lunquist *knew* that "a copy of the statement [that plaintiff wrote] had been passed around the facility, *posing a threat to Inmate Hartry's safety*"; (3) defendant Lunquist *knew* that, as a result of this statement, "*Hartry has been labeled a rat and received death threats ...*"; (4) defendant Lunquist *knew* that plaintiff's cooperation with law enforcement had become "*well known throughout the jail.*"; (5) defendant Lunquist has stated publicly that "*the worst thing* you can be [in jail] is a snitch"; (6) defendant Lunquist received 10 to 20 phone calls from plaintiff regarding his safety in the six weeks prior to the assault; (5) notwithstanding these facts, defendant Lunquist failed to fill out a substitute jail order ("SJO"), which would have transferred plaintiff to another jail facility; (7) it would have taken Sgt. Lunquist only *ten minutes* to fill out an SJO, which he does on average five to ten times a year; and (8) only *after* plaintiff was viciously assaulted by another inmate for being a snitch was an SJO filled out by Sgt. Lunquist.

Thus, there is ample evidence in the record to support plaintiff's deliberate indifference claim, as Sgt. Lunquist *knew* that plaintiff was considered a "rat", *knew* that this information had become "well known throughout the jail" and *knew* that plaintiff had "received death

threats" as a result, yet failed to fill out the SJO until *after* plaintiff had been violently attacked. Under the law of this Circuit, these facts are clearly sufficient to give rise to liability under § 1983. See Ortiz v. Goord, 2008 U.S. App. LEXIS 9655,*2 (2d Cir. 2008) ("Defendants may be held liable under § 1983 if they ... exhibited deliberate indifference to a known injury, a known risk, or a specific duty, and their failure to perform the duty or act to ameliorate the risk or injury was a proximate cause of the plaintiff's deprivation of rights under the Constitution."); Doe v. New York City Dep't of Social Servs., 649 F.2d 134, 141 (2d Cir. 1981) ( "Government officials may be held liable under § 1983 for a failure to do what is required[,] as well as for overt activity which is unlawful and harmful."). At a minimum, however, such facts are sufficient to defeat defendant Lunquist's motion for summary judgment. See Hayes v. New York City Department of Corrections, 84 F.3d 614, 621 (2d Cir. 1996). (citations omitted) ("There was a genuine issue as to a material fact, namely, the defendants' knowledge of a substantial risk of harm to Hayes.") (reversing summary judgment); Villante v. Department of Correction of the City of New York, 786 F.2d 516, 523 (2d Cir. 1986) ("Because genuine issues of material fact exist as to appellee's gross negligence or willful indifference, ... we reverse the grant of summary judgment and remand this case for further proceedings."); Ayers v. Coughlin, 780 F.2d 205, 209 (2d Cir 1985) ( "Whether the defendant Kerbein acted intentionally or with reckless disregard of the plaintiff's right to be free from the risk of harm from Alves presents triable issues of fact that concern the Eight Amendment." ). Accordingly, defendant Lunquist's motion for summary judgment must be denied.

## II. DEFENDANTS' PRLA DEFENSE IS COMPLETELY BASELESS AND SHOULD BE REJECTED BY THE COURT.

In what may best be characterized as a "throw away" argument, defendants now argue – for the first time – that plaintiff's 1983 claims are barred by the Prisoner Reform Litigation Act ("PRLA").[3] For the reasons set forth below, however, it is respectfully submitted that this argument is completely without merit and should be rejected by the Court.

The Second Circuit has articulated "a three-part test" for analyzing contentions that an inmate failed to exhaust administrative remedies. Macias v. Zenk, 495 F.3d 37, 41 (2d Cir. 2007). First, "depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact 'available' to the prisoner." Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004). Second, the court should "inquire as to whether the defendants may have forefeited the affirmative defense of non-exhaustion by failing to raise it or preserve it", or "whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." (Id.) Third, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the 'the prisoner's failure to comply with the administrative procedural requirements.'" (Id.)

---

[3]By its express terms, PRLA would apply *only* to plaintiff's federal claims under Section 1983. It would have no bearing on plaintiff's negligence claims under state law, discussed in Part III, infra.

-12-

### A. Defendant Lunquist Repeatedly Assured Plaintiff That He Was Going To Be Transferred To Another Prison, And Thus, Sgt. Lunquist Should Be Estopped From Now Raising This Defense.

Applying the above three part test, it is clear that the PRLA's exhaustion requirement does *not* bar plaintiff's in this action. First, Sgt. Lunquist repeatedly told plaintiff that he was, in fact, going to be transferred to another jail facility. Thus, plaintiff had every right to expect that he would, in fact, be transferred out of SCCF. Accordingly, there was *no reason* for plaintiff to file a grievance prior to the attack, as Sgt. Lunquist had led him to believe that the necessary action was being taken. Stated differently, "the defendants' own actions inhibit[ed] the inmate's exhaustion of remedies" and therefore, Sgt. Lunquist should be "estop[ped] from raising the plaintiff's failure to exhaust as a defense." Hemphill, 380 F.3d at 686. Accordingly, defendants PRLA should be rejected on this ground alone.

### B. Plaintiff Was Transferred to Another Jail Facility After His Attack, And Thus, There Was No Longer Any Reason To File A Grievance.

After the attack took place, plaintiff was immediately transferred to another jail facility, the Nassau County Correctional Center. Once this transfer took place, plaintiff no longer had the *need* to file a grievance, as he was no longer a prisoner in SCCF. Stated differently, when the transfer took place, plaintiff was in effect granted the "relief" that he would have had obtained had he file a grievance in the first instance. Thus, there was *no reason* to file a grievance at that point.[4] Given the unique facts of plaintiff's case, it is respectfully submitted that "'special circumstances' have been plausibly alleged that justify the [plaintiff''s] failure to comply with the administrative procedural requirements.'" Hemphill, 380 F.3d at 686. Accordingly, defendants' motion for summary judgment based on PRLA should be denied.

---

[4]Nor, for that matter, could plaintiff reasonably be expected to file a grievance at SCCF since he was *no longer a prisoner at SCCF*, but rather, was now a prisoner at a different correctional facility.

-13-

## II. SUMMARY JUDGMENT MUST BE DENIED ON PLAINTIFF'S NEGLIGENCE CLAIM.

It is well-established that "the [municipality] bears the responsibility for the protection of others in its operation of schools, hospitals and other institutions." <u>Dunn v. State of New York</u>, 29 NY2d 313, 317 (1971). "Having assumed physical custody of inmates, who cannot protect and defend themselves in the same way as those at liberty can, the [municipality] owes a duty of care to safeguard inmates, even from attacks by fellow inmates." <u>Sanchez v. State of New York</u>, 99 N.Y.2d 247, 252 (2002). Thus, "[t]o obtain summary judgment, the State must meet a *high threshold*: there must be *only one conclusion* that can be drawn from the undisputed facts: that as a matter of law injury to [plaintiff] was not reasonably forseeable." (<u>Id</u>.)(emphasis supplied). Applying these principles to the facts of this case, there can be no question that defendants' motion for summary judgment must be denied.

### A. Defendants Had Actual Notice of Multiple and Repeated Violent Threats Against Plaintiff Kyle Hartry, But Failed To Take Adequate Measures To Protect His Safety.

The same facts which support plaintiff's deliberate indifference compel denial of summary judgment on plaintiff's negligence claim under New York state law. Most importantly, defendants: (1) *knew* that plaintiff was considered to be a "snitch" by other inmates at SCCF; (2) *knew* that "a copy of the statement [that plaintiff had written against another inmate] has been passed around the facility, *posing a threat to Inmate Hartry's safety*"; (3) *knew* that, as a result of this statement, *"Hartry has been labeled a rat and received death threats"*; and (4) *knew* that on at least three prior occasions, plaintiff had received explicit violent threats from other inmates due to his being a "snitch." Further, defendants had received 10 to 20 phone calls from plaintiff

-14-

in which he told Sgt. Lunquist that he "feared for his safety", that his "life is in danger" and he "need[ed] to be moved" out of the jail. (Lunquist Dep. at 11-12; 34; Hartry Dep. at 145).

Yet, notwithstanding these facts, defendants *still* allowed plaintiff to remain at SCCF. Worse still, defendants housed plaintiff in the "Day Area", which is an *open area* where inmates have free contact with one another and there is nothing separating one inmate from another in the day area. (Lunquist Dep. at 83).[5] Given these facts, a jury most certainly could conclude that the attack on plaintiff was reasonably forseeable. See Sanchez v. State, 99 N.Y.2d at 249 ("we conclude that this record raises a triable issue as to forseeability."). Accordingly, defendants' motion for summary judgment on plaintiff's negligence claim must be denied.

## CONCLUSION

For the reasons set forth above, plaintiff respectfully requests that the Court deny defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in its entirety.

Dated:   New York, New York
         September 29, 2010

```
                                    JON L. NORINSBERG  (JN-2133)
                                    Attorney for Plaintiff
                                    225 Broadway, Suite 2700
                                    New York, NY 10007
                                    (212) 791-5396
```

---

[5] Rather than place plaintiff in the "Day Area", where he was ultimately attacked, defendants could have housed plaintiff in the "Observation Area", which is a small housing unit at SCCF where inmates are under "constant surveillance" by staff members, twenty four hours a day/seven days a week (Lunquist Dep. at 59, 60, 129). The Observation Area is one of the safest and most segregated areas in the entire prison (Lunquist Dep. at 128). Inexplicably, Sgt. Lunquist never even *considered* moving Kyle Hartry into the Observation Area. (Lunquist Dep. at 129).